Good morning, Your Honors, and may it please the Court, Sarah Weinman, Federal Defenders of San Diego, on behalf of Kenneth Stanford. Mr. Stanford told government agents that there was exculpatory evidence on his smartphone post-arrest.  In fact, by the time they got a search warrant months later, every single text message that was on Mr. Stanford's phone prior to September 20th had been deleted en masse, blanket deleted. The government then used those deletions against Mr. Stanford at trial, saying that he had been the one to delete them and that that proved his guilt. The government's failure to preserve the phone evidence and their pinning that loss on Mr. Stanford at trial required dismissal or, at the very least, suppression of all of the phone-related evidence under the Fourth Amendment, the Fifth Amendment, and the Rules of Evidence. The government here improperly searched and seized... Do we review that issue for plain error at this point? No, Your Honor. You review this issue de novo. Mr. Stanford repeatedly brought the issue of the failure to preserve the phone evidence to the Court's attention, repeatedly. But the ground, as I understand the record, is that the phone evidence should be excluded because he wasn't able to obtain an expert. That was one of the grounds. But he also stated at several points that the failure to preserve the phone evidence more generally should result in dismissal. And because he brought that issue to the Court's attention and stated the grounds for the objection under Rule 51, the issue was preserved. And that goes to all of the claims that we raise here on appeal. And with respect to the Fourth Amendment claim, the government's search and seizure here were unreasonable and should have resulted in the suppression of evidence at trial. When you say search, you're talking about search of the phone? Correct. Go ahead. Yeah. So the government here has argued that the search was proper under the Border Search Doctrine, but the Border Search Doctrine doesn't apply here for a couple of reasons. First of all, the particular purpose of the Border Search exception is to keep out unwanted contraband, unwanted persons and effects from entering the country. But here, Mr. Stanford had already been arrested. The contraband had already been seized from his car. And the smartphone was being held in government custody as evidence of that alleged importation offense. That makes this case quite unlike Cotterman. In that case, the defendant was apprehended at the port of entry with laptops that agents suspected contained contraband files. That was child pornography. The defendant wasn't arrested. He was let go. But they retained the laptops in order to prevent that contraband from entering the country. That's simply not what happened here. Because the phone was being held in evidence and because it was searched in an investigative manner, Riley, and not Cotterman, is the controlling precedent. And Riley required the government to get a warrant here, which they didn't do. The government's unreasonable search and seizure also resulted in the destruction of evidence. The government has conceded that here. And for that reason as well, because the search was destructive, even if the border search exception applied, under Flores-Montano, Ramsey, and Seljan. When you say the government has conceded that, what exactly did the government concede? The government states that someone went through Mr. Stanford's contacts on his smartphone and made a call to one of those contacts. The day after Mr. Stanford was arrested, while the phone was being held in evidence. The government also has conceded that there were several attempts to access the internet using the apps on the phone the day after arrest as well. When you say attempts, attempts by government agents? It's unclear. But at that time, the phone was being held in government custody. So I believe that the government in their response brief has suggested that it could have been someone other than a government agent who did these searches. It could have been remotely accessed, right? It could have been remotely accessed. And that goes to why the phone was also unreasonably seized here. The phone was being held in government custody. That's undisputed. So the government had the responsibility to maintain the phone in a secure manner. We cited federal protocols in our briefing, but also if you look at the warrant application in this particular case, which is that supplemental excerpts of records 61 and 62, even the warrant affidavit here says that the phone should have been secured in a signal-free manner. If the phone, if someone or something was making calls from the phone, was searching the internet on the phone, was deleting web history from the phone. If the government concedes, it could have done a better job. But the question is, I have a hard time finding out how you show prejudice from all this. What's the prejudice? The prejudice here is that at trial, the government, the prosecutors essentially steamrolled Mr. Stanford with the deleted evidence at trial repeatedly over and over in their initial and rebuttal closing arguments. The government focused on the fact that there were hundreds of text messages deleted, that Mr. Stanford must have been the one to delete them. And then that proved that he knew that there were drugs in his car. Knowledge was the only disputed element in this case. But what's the inference to be drawn from deleted messages if they don't have any information on what those messages said? I mean, this seems to have minimal evidentiary value in terms of the argument. So how did that hurt his case in light of the fact that drugs were found? I guess two points. First of all, Mr. Stanford told the government that there was exculpatory evidence in the text messages on the phone. Well, he never said what it was exactly, did he? He didn't. And once those – Well, don't you have to make – he have to make a showing of what the exculpation was? He can't just say, well, you know, that's all exculpatory. I mean, what's exculpatory about it? Well, what he stated was that the evidence would show that he would confirm what he told government agents, which is that he was being paid to bring in unlawful compartments and car parts into the country. And so that was the content of the text messages that he pointed the agents to. And the contents of those messages were destroyed. But you said the government was trying to steamroll in with the deletions, but nobody knows what the deleted messages say. So it doesn't have a whole lot of evidentiary value. Well, that's the second point, and I would beg to disagree there. It was the fact of the deletions themselves, irrespective of the contents of the messages, that the government used to steamroll Mr. Stanford, saying it didn't matter what the – Consciousness of guilt type of inference? Right. Exactly. And the government really pressed that to the jury over and over. There was extensive testimony from the case agent about the fact that all these messages had been deleted. And I would point out again, just to be clear, the deleted messages that the prosecutors referred to in their closing arguments were hundreds of messages, all dating prior to September 20th. That was the day before arrest. But the agents also testified that there wasn't a single message on the phone prior to that date. So this supports the inference that those messages were blanket deleted, and possibly as a result of the fact that the government had preserved the phone in this improper manner that permitted it to receive a signal. I'll ask you one question before your time runs out. Are you contending that Riley overruled Cotterman and that you needed suspicion or a warrant at the border? It is our position that Cotterman is clearly irreconcilable with Riley for a couple of reasons. First of all, Riley didn't draw the type of distinction between a manual search and a forensic search that Cotterman drew. It held instead that even a manual search is so invasive of an individual's privacy rights that a warrant is required. But also Cotterman just never – He said that a warrant was required for an incident to arrest a search, but it didn't say what was required at the border.  Well, even if this Court believes that Cotterman isn't irreconcilable with Riley, for all the reasons I stated before, this wasn't a border search, and more was required than reasonable suspicion. I'm sorry. Because this was an investigative search and not a routine border search, a warrant was required. You're saying it's not a Cotterman situation altogether. Precisely. If I could reserve the remainder of my time. Thank you. May it please the Court, Daniel Zip on behalf of the United States. Your Honor, two and a half months after the defendant was arrested in this case, the agents conducted the search of his cell phone pursuant to a valid federal search warrant. It's undisputed that nothing that was obtained from the defendant's phone at the time he crossed the border was used to support that search warrant two and a half months later. So under the independent source doctrine, suppression of the evidence obtained from that search warrant would not have been an appropriate remedy, regardless of what may or may not have happened the morning after his arrest. Can you address counsel's point about the government's closing argument, attempting to basically use the fact of deletion and I don't know if it's remote access to the phone. I can't quite tell even what happened because the phone was in the government's custody and apparently a phone call was made, Internet searches were made. So it's unclear what happened, but counsel's point is that in closing, despite the fact that the government controlled the evidence, it was used against the defendant and there was a suggestion that the jury should draw an adverse inference of guilt based on that activity. Yes, Your Honor. I think the confusion arises from the fact that this idea that there were text messages deleted from the phone is new on appeal. Below, no parties were arguing that there was an auto delete function or that there may have been text messages deleted. The only question was whether the agents had accessed Facebook and possibly changed the privacy settings. So this idea of deleted text messages is new and was not addressed below. But going to the closing argument, what we argued was not that the deletion of text messages generally should be held against this defendant. It was a very specific argument tied to the types of text messages or the timing of the text messages that were deleted. Specifically in this case, what we did was we took the toll records showing who the defendant was texting with and when and compared those against the texts that were on his phone at the time he crossed the border. And what those showed was that with his girlfriend, he was texting hundreds of times in the days leading up to the crossing, but that a single text message had been deleted while he was in line coming into the port of entry. That text message she responded to and said, they do that to everyone that's crossing, suggesting that he probably said something to the effect of, oh my God, I'm being secondary and they're checking under the hood. He deleted that message and that message alone. So the argument that there was some universe of older text messages that may have been automatically deleted would have no relevance on that question of whether he specifically deleted only a single message from himself. Likewise, as far as the hundreds of deleted emails, that argument was tied directly to the deletion of the emails that he exchanged with this person he knew as Joe. And those showed that even when his phone contained hundreds of emails with his girlfriend during the two days leading up to the arrest, all of the text messages that he had sent to Joe, according to the toll records, had been deleted. In fact, up until a few minutes before he crossed the border, he was still texting with Joe. All of that had been deleted. So our argument was closely tied to those two inferences, that he, while he's waiting in line to cross into the border, he gets pulled into secondary and he deletes a message to his girlfriend and all of the messages from Joe had also been deleted. I want to get to Judge Reinhardt's question about Riley. But before that, you know, I want you to clarify the underlying facts. First of all, you referred to this search warrant with two months late. I mean, search two months later after one was obtained. But there was also a search right of the phone the day after he was arrested. Isn't that right? At the border. The agent did not conduct a search of the phone. Well, he looked at the phone, didn't he? He looked through the, you know, whatever he could find? No, Your Honor. The only evidence is that the morning after the defendant was arrested, after the agents had already left and gone back to their office, there was a 30-second call to Lil Sis placed from the phone and the phone then tried to access a Facebook page twice unsuccessfully. That's it. Then do you mean then the question here of whether and how Riley applies has to do with the search two and a half months later? We don't think the question of whether Riley applies or whether this was or wasn't a border search has any relevance at all to this case, Your Honor. Well, that's what I'm starting to think now, the way you, you know, give the progression of the facts. Are you saying the only facts that were used by the prosecution that were obtained from a phone search were facts that were obtained from the search, was it two and a half months later? That's correct, Your Honor. Which was pursuant to a warrant? Yes. So the only search, so your position is the only search made by the government, phone search, was a search pursuant to a warrant. Is that right? That's the only evidence that was introduced that came from that. That was used at the trial, right? Yes. We don't really know what happened that morning after, but the fact is the agents... But the government says that a search, other than the search pursuant to the warrant, the government's position is that no other search occurred, but the defendant's position is that a search must have occurred because the phone was in government custody at the time that a phone call was being made using the phone and then there were attempts to access the Internet from the phone. Am I getting the facts right? That's correct, Your Honor. So was the warrant in any way tainted by... Let's assume that a search or searches were made prior to the warrant because somebody used the phone to access something. Yes. Was this when the agent said it might have been a dial situation? Correct. So if we assume that a search was made, was the warrant tainted by anything that the government might have obtained? No, Your Honor. The simple answer to that is the agents didn't even know about this dial search until after they got back the results from the search warrant. The agent himself didn't conduct that search. No one even knew that this had happened until after they had gotten a valid search warrant from a magistrate and conducted a search of the phone pursuant to that. So it had absolutely no effect on any of the search or the evidence that was introduced at trial. Well, under what you just summarized, the Riley question doesn't even come up, does it? That's correct, Your Honor. And whether or not the Cotterman and Riley are inconsistent with each other. That's not a concern in this case, is it? No. Because there was not that kind of search without a warrant at the border or anywhere else. Yes, that's correct, Your Honor. As to the evidence destruction, again, the only defense counsel has indicated that we conceded that things were destroyed on the phone. I think the only concession was that when the phone tried unsuccessfully to access the Internet, at that exact same millisecond there was a deletion of that web history access. That's the only evidence anywhere that anything was deleted from the phone. This idea that there was a universe of text messages that were deleted was simply nowhere in evidence and not even discussed below. And furthermore, even if there had been some auto-delete function, there's no indication that the agents were aware of that function, and there's certainly no indication that what they did in this case rose to the level of bad faith. At most, and we conceded that they should have done a better job of accessing this phone only in a Faraday box where it couldn't receive an outside signal, but at most that was negligence, which doesn't rise to the level necessary for dismissal under Arizona v. Youngblood. I'm happy to answer any other questions. Thank you. Thank you. What is your assertion as to whether there was a search of the phone before the search pursuant to the warrant? The phone was searched. It was in government custody. A call was made on September 22nd. When an outgoing call was made from the phone to a contact on the phone and when the Internet was accessed from the phone and information deleted. That occurred on September 22nd, the day after arrest. But even if we assume that, none of that made it into the warrant, did it? It didn't, but I would like to address this independent source doctrine. So Murray states that the classic formulation of the independent source doctrine is that it applies when a particular category of evidence acquired by an untainted search is identical to the evidence unlawfully acquired. It wasn't here. We know that things were deleted off the phone during those improper searches. So under Murray, as well as under Nix, which states that when the challenged evidence is tainted by the initial illegality, the independent source doctrine simply has no place. But I would like to also address this second point with regard to even if this court disagrees that there was a search, the evidence still should have been suppressed if not the charges dismissed under the Fifth Amendment. For all the reasons we stated in our brief, there was bad faith here. Mr. Stanford told the agents there was exculpatory evidence on his phone. The apparent exculpatory value of the phone was evident to agents as a result of that. The prosecutors repeatedly misled the district court about whether the phone had been mishandled while it was in government custody. And there was no comparable evidence for all the reasons I explained earlier as far as explaining when the messages were deleted and by whom. So for those reasons, looking at Zaragoza-Morera, the charges should have been dismissed. Did the district court make any findings on whether the phone was searched before the warrant? The court didn't. The court simply stated that this happened at the border, therefore it was okay. And that was pretty much the extent of the district court's ruling. But even if this court doesn't find bad faith, the government has said that it was negligent in failing to preserve the evidence. Now under then-Judge Kennedy's opinion in Loud Hawk, the appropriate sanction for that negligent failure to preserve evidence is suppression of the evidence or dismissal of the charges. And that's the remedy we would urge that the district court should have exercised here. Thank you. Thank you, Judge. The case, Judge, will be submitted.
judges: Reinhardt, Tashima, Nguyen